it covers all the mortgaged property. It was acknowledged July 8, 1896, but was not recorded until August 25, 1900. No evidence was given to impeach the deed, nor is there any finding adverse to its validity. A deed is presumed to have been delivered at the time of its date, notwithstanding it may be acknowledged afterwards. People v. Snyder, 41 N. Y. 397; Biglow v. Biglow, 39 App. Div. 103, 105, 56 N. Y. Supp. 794. In People v. Snyder, supra, the court said (page 402):

"No other evidence was given than that which the deed itself furnished, for the purpose of showing the time of its delivery, and under the state of the proof the law presumes it to have been delivered at the time of its date. Seymour v. Van Slyck, 8 Wend. 403, 414; Cowen & Hill's Notes (3d Ed.) part 1, p. 461, and part 2, p. 583, and cases cited; and Duke of Cumberland v. Graves, 7 N. Y. 305, 308, where that view was very properly taken in the application of the law to this deed, for the subsequent acknowledgment did not change that presumption. Ford v. Gregory, 10 B. Mon. 175, 180."

But even if the presumption of delivery should not attach until the time of the acknowledgment, it appears that the deed to the appellant was delivered upon that theory nearly four years before the execution of the plaintiff's mortgage. No evidence was given as to the possession of the real estate, but the presumption of possession must follow the proof of ownership. It was not claimed that the appellant knew of the plaintiff's bond and mortgage, or that she received any part of the money loaned upon them. The question presented on the appeal relates, therefore, to the power of a grantor to incumber real property after the execution and delivery of a deed. No authority is cited in support of such power, and it is elementary knowledge that, in the absence of special authority conferring it, the power does not exist. Certainly a grantor on whom such power has not been conferred could not confer the power upon his attorney by implication.

The judgment should be reversed, and new trial granted; costs to abide the final award. All concur.

---

(98 App. Div. 275)

### ORANGE COUNTY v. ELLSWORTH et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. EMINENT DOMAIN — COUNTIES—HIGHWAYS—STATUTES—CONSTITUTIONALITY OF STATUTE.

Laws 1901, p. 680, c. 240, entitled "An act supplementary to chapter 115 of the Laws of 1898," as amended by Laws 1902, p. 1221, c. 510, provides the board of supervisors of a county, as representative of the county, with the power of eminent domain in improving public highways. The act does not provide, in terms, for any judicial determination of the allegations of the petition, or for the making of any defense; but the condemnation law (Code Civ. Proc. c. 23) provides, in section 3358, that the word "person" includes a political division of the state, and, by section 3359, whenever any person is authorized to acquire title by condemnation, the proceedings for that purpose are to be taken in the manner prescribed by the condemnation law. Held that, inasmuch as the provisions of the condemnation law are not inconsistent with the provisions of the act of 1901 as amended, the proceedings pointed out by the condemnation law are applicable to proceedings under the act of 1901 as amended, and hence the act is not unconstitutional on the ground that

there is no provision for denying or controverting the petition, or mak-
ing any pleading or defense, and no opportunity to litigate the right of
the plaintiff to maintain the proceedings.

**2. SAME—APPEARANCE—NOTICE—WAIVER OF DEFECTS.**
    Where, on proceedings by a county to condemn land under Laws 1901,
p. 680, c. 240, supplementary to Laws 1898, p. 218, c. 115, as amended
by Laws 1902, p. 1221, c. 510, the landowner appeared without any lim-
itation on the appearance, he waived any question of the sufficiency of
publication of notice.

**3. SAME—SUFFICIENCY OF PETITION.**
    On proceedings by a county to condemn land under Laws 1901, p. 680,
c. 240, supplementary to Laws 1898, p. 218, c. 115, as amended by Laws
1902, p. 1221, c. 510, an objection that the petition failed to state that
the proceeding was authorized by the board of supervisors was one
that could have been raised by answer, but was not tenable as a pre-
liminary objection where the petition recited, in substance in the language
of the statute, that all of the preliminary steps required by law had
been taken to entitle petitioner to institute the proceeding.

**4. SAME.**
    Where a petition in proceedings by a county to condemn land under
Laws 1901, p. 680, c. 240, supplementary to Laws 1898, p. 218, c. 115, as
amended by Laws 1902, p. 1221, c. 510, recited, in substance in the lan-
guage of the statute, that all the preliminary steps required by law had
been taken by petitioner, the fact that the petition contained a more or
less ambiguous recital not required by statute, which might be construed
to contradict the averment as to the preliminary steps having been taken,
was not available to defeat a confirmation of the report of the commis-
sioners.

Appeal from Orange County Court.

Proceeding by the county of Orange against Edward Ellsworth
and another to condemn certain land for highway purposes. From
a decision and order of the county court confirming the report of
the commissioners, Edward Ellsworth appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS,
WOODWARD, and HOOKER, JJ.

Joseph W. Gott, for appellant.
Graham Witschief, for respondent.

WOODWARD, J. Chapter 240, p. 680, of the Laws of 1901,
entitled "An act supplementary to chapter one hundred and fifteen
of the Laws of Eighteen Hundred and Ninety-Eight, entitled 'An
act to provide for the improvement of public highways,' relative
to securing the requisite right of way by the boards of supervisors
of counties in which public highways are improved pursuant to
said chapter," is challenged upon this appeal as being in violation
of the Constitution of this state and of the United States. This
act provides in section 2 (page 681) that the board of supervisors of
a county in which the highways are to be improved under the pro-
visions of the original act may provide for the purchase of any right
of way necessary to such work, provided that in no single instance
more than $100 shall be thus expended. Section 3 (page 681) pro-
vides that:

"In case the board of supervisors may not be able to acquire the land by
purchase as provided for in the last section the board of supervisors may
present to the County Court of the county or to the Supreme Court, at

90 N.Y.S.—37

a Special Term thereof, * * * a petition for the appointment of three commissioners of appraisal to ascertain and determine the compensation to be made to the owners and all other persons in any manner interested in any and all real estate over which such right of way is required. Such petition shall describe the land to be acquired, a reference to the map upon which the same is shown and shall have annexed thereto said map or diagram showing the land to be acquired. Such petition shall be signed in the name of the board of supervisors by the chairman thereof * * * and shall be verified by the said chairman * * * as aforesaid. Notice of presentation of such petition to such court shall be given by the petitioner by publishing such notice in two newspapers published in such county, once in each week for two weeks successively preceding the day of such presentation, and also by posting a copy of said notice in not less than three public places in each town in which property to be acquired is located, at least eight days preceding the day of such presentation."

Section 4 (page 682), so far as it has any bearing upon the question presented on this appeal, provides that:

"Upon such presentation, such court shall, after hearing any person interested or claiming to be interested in any land to be acquired in such proceeding who may appear, appoint three disinherited persons as commissioners."

The county of Orange, through its board of supervisors, has sought to take the lands of the defendant under the provisions of this act. It presented a petition to the County Court, and upon the day named in the published notice for the presentation of such petition the defendant Ellsworth appeared by his attorney and filed written objections to the proceeding, without suggesting any limitation upon the appearance, so far as appears from the records, or by anything now urged upon the consideration of this court. By this general appearance the court unquestionably gained jurisdiction of the person of the defendant (Reed v. Chilson, 142 N. Y. 152, 155, 36 N. E. 884, and authorities there cited), who must be deemed to have waived any question of the sufficiency of the notice published; and if the objections then urged are untenable, and the statute is not open to the objection of unconstitutionality, the appeal must fail, and the order be affirmed, unless there was error calling for reversal in the conduct of the appraisers, whose report has been confirmed.

The objections stated, upon which no ruling appears to have been asked for or made, are as follows:

"(1) Chapter 240 [page 680], Laws 1901, and the amendments thereto by chapter 510 [page 1221], Laws 1902, are unconstitutional: (a) The statute fails to provide for personal service of notice of application, or for a proper publication of notice of application. (b) That the owners whose lands are sought to be acquired herein are not properly before the court, and any and all proceedings taken herein are wholly inoperative to cut off defendants' interests, and are null and void. (c) That no provision is made in said act for denying or controverting the petition, or for making any pleading or defense, and that defendant landowner is not permitted, on the return of the petition or at any subsequent time, to litigate the question of the right to maintain the proceeding, or to raise the issue of the use and necessity requiring the condemnation of the lands herein. (d) That the lands in question are not sought for public purposes. (2) That the petition herein is fatally defective, in that it does not state the specific purposes for which the lands in question are to be used. (3) The petition fails to allege that this proceeding was authorized by the board of supervisors, as prescribed by chapter 240 [page 680], Laws 1901, and the amendments thereto, but, on the other hand,

it affirmatively appears that it was only authorized by resolution of a subcommittee thereof, and such failure renders this proceeding void. (4) The verification is defective, in that it does not state authority to make such verification, nor does it anywhere appear in the petition that such verification is authorized."

The objections under clauses "a" and "b" are disposed of by the fact that the defendant voluntarily appeared and submitted to the jurisdiction of the court. If the defendant is correct in his assumptions under clause "c" that there is no provision for denying or controverting the petition or making any pleading or defense, and no opportunity to litigate the right of the plaintiff to maintain the proceeding, etc., a more serious question is presented; and, the defendant's objections having been ignored, we are disposed to consider this question. It is important at the outset to determine the question whether the defendant is denied these rights, for there can be no doubt that, if the law deprives him of an opportunity to have a judicial determination of the questions suggested, it operates to deprive him of his property without due process of law. It is true, we believe, that the statute (chapter 240, p. 680, of the Laws of 1901, read and construed in connection with chapter 115, p. 218, of the Laws of 1898) does not in terms provide for the judicial determination of any of these questions, but it does not necessarily follow that the law is thus unmindful of his rights. Chapter 115, p. 218, of the Laws of 1898, made no provision for a county to take private property for public purposes. It provided in section 7 (page 219) that:

"In case the boundaries of such proposed highway shall deviate from the existing highway, the board of supervisors must make provision for securing the requisite right of way prior to the actual commencement of the work of improvement."

And chapter 240, p. 680, of the Laws of 1901, being supplemental to this act, was designed to provide the board of supervisors, as the official representative of the county in its corporate capacity, with the power of eminent domain. Neither of these acts contains a repealing clause, and repeal by implication is never favored by the courts. Woods v. Supervisors, etc., 136 N. Y. 403, 409, 32 N. E. 1011. So that, unless we find these acts to be so repugnant to the condemnation law (chapter 23 of the Code of Civil Procedure) that both cannot operate together, or that these later statutes were evidently intended to furnish the whole law on the particular subject (Woods v. Supervisors, etc., 136 N. Y. 409, 32 N. E. 1011, and authority there cited; Coxe v. State, 144 N. Y. 396, 411, 39 N. E. 400, and authorities there cited), we must read and construe chapter 240, p. 680, of the Laws of 1901, in connection with the general laws of the state. The rule is well established that when some office or function can by fair construction be assigned to both acts, and they confer different powers, to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject. Woods v. Supervisors, etc., 136 N. Y. 409, 32 N. E. 1011, and authority there cited. And this rule is in entire harmony with, and, indeed, is in effect the same as, that rule which requires that constitutional or statutory provisions which relate

to the same subject, being in pari materia, shall be construed together.   Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 733, 5 Sup. Ct. 739, 28 L. Ed. 1137, and authority there cited; 26 Am. & Eng. Ency. of Law (2d Ed.) 620; Matter of Livingston, 121 N. Y. 94, 104, 24 N. E. 290; People ex rel. Jackson v. Potter, 47 N. Y. 375, 380, and authorities there cited; In re Rapid Transit Commissioners, 147 N. Y. 260, 267, 41 N. E. 575.   In Matter of Livingston, supra, supported by the authorities last above cited, it was said, in determining the intention of the Legislature:

"Words absolute in themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute, and to other acts on the same subject passed before or after, and to the conditions and circumstances to which the legislation relates."

See Blaschko v. Wurster, 156 N. Y. 437, 443, 51 N. E. 303, and authorities cited.

It is plain, therefore, that, unless chapter 240 is in such direct antagonism as to prevent the possibility or harmonizing it with the provisions of the condemnation law, the latter must be deemed to have been left in full force and effect.   A careful examination of the statutes convinces us that both may be read together, and that they may easily stand together, without any serious clash or conflict; and, where that can be done, our duty is to reconcile them and give to each its operative force.   People ex rel. v. N. Y. Catholic Protectory, 101 N. Y. 195, 200, 4 N. E. 177; Woods v. Supervisors, 136 N. Y. 409, 32 N. E. 1011.

If, under the rules to which we have called attention, the provisions of the condemnation law are permitted to supplement and explain those of chapter 240, p. 680, of the Laws of 1901, and the two acts, standing together, provide the defendant an opportunity to litigate any question relating to his property rights, it is clear that this court is not called upon to declare the latter act unconstitutional.   People v. Rosenberg, 138 N. Y. 410, 415, 34 N. E. 285, and authorities there cited; People v. Lochner, 177 N. Y. 145, 158, 159, 69 N. E. 373, and authorities there cited.   That it was the purpose of the Legislature, in enacting the condemnation law, to supplement all laws in reference to the taking of private property for public purposes, is clearly evidenced by its language, for it is provided that:

"Whenever any person ["persons" being defined to include natural persons, "the state and a political division thereof"—section 3358] is authorized to acquire title to real property, for a public use by condemnation, the proceeding for that purpose shall be taken in the manner prescribed in this title." Section 3359, Code Civ. Proc.

It related not to any particular act, but to all acts.   Whenever the Legislature authorized any person or corporation to take private property for public purposes, this act was to come into operation and provide the method of procedure.   It does not authorize the taking of the property of any one.   It merely prescribes the method of judicial procedure (the "due process of law") in those cases where by virtue of the provisions of some other law the exercise of the right of eminent domain has been conferred for public pur-

poses. Rochester Railway Co. v. Robinson, 133 N. Y. 242, 247, 30 N. E. 1008. And the purpose of this enactment was to establish one rule throughout the state by which the rights of persons in their property should be determined. It was a formulation of the law of the land, which means a "general and public law, equally binding upon every member of the community." Vanzandt v. Waddel, 2 Yerg. 260. See Cotting v. Kansas City Stockyard Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92. And we are of the opinion that it accomplishes the purpose for which it was designed. Section 3360 of the Code of Civil Procedure provides that that proceeding shall be by petition to the Supreme Court, setting forth certain facts enumerated under seven subdivisions, including "a specific description of the property to be condemned, and its location by metes and bounds," in substantial harmony with the provisions of section 3 of chapter 240, p. 681, of the Laws of 1901. The next section provides for giving notice of the time and place when the petition will be presented to the court; this notice being required to be given at least eight days before such presentation by a personal service of the notice, with a copy of the petition. Chapter 240, p. 680, of the Laws of 1901, provides for giving this notice by publication at least eight days prior to the presentation of the petition; but, as we have already suggested, the defendant is in no position to raise any question under this head, for he has voluntarily come in and submitted himself to the jurisdiction of the court. Whether a notice by publication is sufficient, without the service of a copy of the petition upon the person whose property is to be taken, is not necessary to be determined here, for the condemnation law provides for such service; and, if necessary to support the statute, this might be construed to be in addition to the publication required, there being no inconsistency between the requirement that a notice shall be published of the action of a representative body and a personal service upon the individual whose property rights are to be affected. Section 3362 provides the method of serving these papers, and the same subject is continued in the following section, while section 3364 provides for the appearance of parties, conforming the practice to that of actions. Section 3365 provides that:

"Upon presentation of the petition and notice with proof of service thereof, an owner of the property may appear and interpose an answer, which must contain a general or specific denial of each material allegation of the petition controverted by him, or of any knowledge or information thereof sufficient to form a belief, or a statement of new matter constituting a defence to the proceeding."

Subsequent sections provide for the verification of the pleadings, for the trial of the issues raised by the answer, and generally for the conduct of the entire proceeding before the court, which is made to conform substantially to the proceedings in an action.

The petition in the present proceeding conforms to the requirements of section 3360 of the Code of Civil Procedure, as well as some of the provisions of chapter 240, p. 680, of the Laws of 1901; and, if the defendant had interposed an answer, he would have been entitled, under the law, to a trial of any of the questions which

would have been open to any citizen whose property was being taken under the power of eminent' domain. The law provided due process; it opened the way to him to litigate any issue which he might have desired to raise; and, having neglected to answer, he must be deemed to have waived any of the issues which he now seeks to review upon this appeal.

It may be proper to point out that the objection that the petition fails to allege that this proceeding was authorized by the board of supervisors, etc., was one which could have been raised by answer, but that it is not tenable as a preliminary objection, as the petition recites, in substance in the language of the statute, "that all of the preliminary steps required by law have been taken to entitle your petitioner to institute this proceeding"; and the fact that the petition contains a more or less ambiguous recital, not required by the statute, which might be construed to contradict this averment, is not available to defeat the action which has been taken. See Rochester Railway Co. v. Robinson, supra; Williamson v. Wager, 90 App. Div. 186, 190, 86 N. Y. Supp. 684, and authorities there cited.

The commissioners viewed the premises, and, it not appearing that they were governed by any erroneous theory, we are of opinion that the judgment confirming the report of the commissioners should be affirmed, with costs.

The order appealed from should be affirmed, with costs. All concur.